07 CV 6376

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ROBERT W. MANN, AS TRUSTEE FOR ROBERT W. MANN RETIREMENT TRUST, LOTUSBAY, LLC, LIAN MEI DEVELOPMENT, LLC,   (both incorporated in State of Delaware) | : : : : : : | Docket #  COMPLAINT FOR DAMAGES, IMPOSITION OF CONSTRUCTIVE TRUST AND FOR ORDERS BASED ON: |
| Plaintiffs | : : | |
| V. | : : | |
| MICHAEL ROBERT ALEXANDER BROWN, a/k/a MICHAEL BROWN, 5th AVENUE PARTNERS, LTD., a/k/a FIFTH AVENUE PARTNERS, LTD., 5th AVENUE PARTNERS (U.K.), LTD., a/k/a FIFTH AVENUE PARTNERS, LTD.; LAMBERHURST DEVELOPMENTS, LTD., IDB FOUNDATION,   (all entities incorporated in England and Wales) DEVONSHIRE CAPITAL, LTD.,   (incorporated in Gibraltar) 5th AVENUE PARTNERS, GMBH, a/k/a FIFTH AVENUE PARTNERS GMBH   (incorporated in Switzerland) FIFTH AVENUE PARTNERS, S.L., a/k/a 5th AVENUE PARTNERS, S.L.   (incorporated in Spain) 5th AVENUE PARTNERS, LTD., a/k/a FIFTH AVENUE PARTNERS, LTD.   (incorporated in British Virgin Islands) | : : : : : : : : : : : : : : : : : : : : : | 1. MISREPRESENTATION; 2. FRAUD; 3. UNJUST ENRICHMENT; 4. FRAUDULENT CONVEYANCES; 5. BREACH OF FIDUCIARY DUTIES; 6. SECURITIES EXCHANGE ACT; 7. DECLARATORY RELIEF; 8. ACCOUNTING |
| Defendants | : | : |

JUL 12 2007
U.S.D.C. S.D.N.Y
CASHIERS

Plaintiffs, by their attorneys, Rawle & Henderson LLP, hereby allege, upon

personal knowledge as to themselves and their own acts, and upon information and belief

as to all other matters, as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiffs, Robert W. Mann, as trustee for the Robert W. Mann Retirement Trust, Lotusbay LLC and Lian Mei Development LLC, bring this action for asserting supplemental claims.  These claims are supplemental, and in addition, to the limited claims adjudicated and resolved under the Judgment entered by the Commercial Court, Queens Bench Division, Royal Courts, in London, Great Britain.  Said Judgment was entered on or about October 23, 2006, against Michael Robert Alexander Brown, a/k/a Michael Brown; Fifth Avenue Partners Ltd., a/k/a 5th Avenue Partners Ltd.; Devonshire Capital Ltd., Lamberhurst Properties Ltd., and Fifth Avenue Partners GmbH., a/k/a 5th Avenue Partners GmbH.

2.    A copy of the certified Order for Judgment to Be Entered by the Commercial Court, Queens Bench Division, Royal Courts, in London, Great Britain, with the Apostille Certification pursuant to the 1961 Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, is attached hereto as Exhibit "A".  In sum, the judgment resolved the claims based on conversion, money had and received, with restitution and interest upon proceeds.

3.    In this action, there are 3 additional defendants, to wit Fifth Avenue Partners (U.K.) Ltd., a/k/a 5th Avenue Partners (U.K.) Ltd, incorporated in England and Wales; Fifth Avenue Partners S.A., a/k/a 5th Avenue Partners S.A., incorporated in Spain; and Fifth Avenue Partners Ltd., a/k/a 5th Avenue Partners Ltd., incorporated in the British Virgin Islands.  This action excludes the claim based on conversion and money had and received, adjudicated under that above judgment, and asserts 8 (eight) supplemental

claims and counts that have not been adjudicated.  All references herein to Fifth Avenue

Partners shall include all forms of spelling of Fifth Avenue Partners including but not

limited to 5th Avenue Partners Ltd.

      4.      Plaintiffs could not adjudicate all of their claims in the prior case 2005

Folio 841, at the Commercial Court in London. In that prior action there were altogether

16 defendants, including 7 so-called "part 20" defendants, with multiple cross-claims;

and since there was so much confusion between various claimants in the overburdened

proceedings, any meaningful adjudication of further claims was prevented. It is the

Plaintiffs position that they have never been served personally in that case and they never

have made a general appearance. Their position is that there never has been even an

attempt to execute and to complete service of process, personal service in writing, in

accordance with international law and the laws in force in any foreign jurisdiction

pursuant to the Hague Service Convention of 1965; therefore, the laws of the United

States concerned with personal service that are in force pursuant to the Hague Service

Convention were ignored and violated. Accordingly, any participation of the plaintiffs

after the above-mentioned limited judgment would be in the absence of compliance with

international law and the laws of the U.S. in force pursuant to the Hague Service

Convention.  The nullity of any foreign adjudication without service when required under

the 1965 Hague Convention for Service Abroad of Judicial and Non-Judicial Documents

in Civil and Commercial Matters is well established; the courts have held that the

Convention should be fully complied with.  *Lemme v. Wine of Japan Import, Inc.,*

D.C.N.Y.1986, 631 F.Supp. 456, 462, *In re CINAR Corp. Secs.*,  D.C.N.Y.2002, 186

F.Supp.2d 279; *Darden v. DaimlerChrysler No. America Holding Corp.,* D.C.N.Y.2002,

191 F.Supp.2d 382; *Bankston v. Toyota Motor Corp.*, C.A.8th, 1989, 889 F.2d 172;

*Shenouda v. Mehanna*, D.C.N.J.2001, 203 F.R.D. 166.

## II.    PARTIES

5.      Plaintiff, Robert W. Mann, as trustee of Robert W. Mann Retirement Trust (hereinafter "MANN"), is a citizen of California, residing in Los Angeles and elsewhere in California, and is referred to herein as one of the plaintiffs.

6.      Plaintiff, Lotusbay LLC (hereinafter "LOTUSBAY") is a Limited Liability Company, organized under the laws of the State of Delaware, with the registered office at: 2711 Centerville Rd., Suite 400, Wilmington, DE 19308. LOTUSBAY is the assignee of the certain claims, whose original holder was Yan Lucy Lu ("LU"), a citizen of Canada. LOTUSBAY is referred to herein as one of the plaintiffs.

7.      Plaintiff, Lian Mei Development LLC (hereinafter "LIAN") is a Limited Liability Company, organized under the laws of the State of Delaware, with the registered office at: 2711 Centerville Rd., Suite 400, Wilmington, DE 19308. LIAN is the assignee of the certain claims, whose original holder was Kevin So ("SO"), a citizen of People's Republic of China. LIAN is referred to herein as one of the plaintiffs.

8.      Defendant, Michael Robert Alexander Brown (hereinafter "BROWN") is, and was, at all relevant times hereto, a citizen of the United Kingdom and resident of Spain and/or Switzerland. BROWN has conducted business internationally, including in New York and has, upon information and belief, assets located in New York, in particular upon fraudulent transfers. BROWN's latest known usual place of abode, before his latest arrest in about April of 2006, was at: Avenue Rotgetes 9, Esporles, Mallorca, 07190,

Spain. BROWN's current usual place of adobe is, on information and belief, a correctional institution under the auspices of the Home Office and Ministry of Justice of the U.K. or possibly on supervised bail.

9.      Defendant, 5th Avenue Partners Ltd., a/k/a Fifth Avenue Partners Ltd., (hereinafter "FIFTH AVENUE") is, and was, at all relevant times hereto, a company organized under the laws of England and Wales, with offices at: Calle Conquistador 18, Planta Primero, Palma de Mallorca, 07001, Spain, as well as at: 26 Upper Book Street, London, 1WK 7QE, and/or 10 Dominion Street, London, EC2M 2EE, U.K., and other locations. FIFTH AVENUE has been conducting business internationally, including its having conducted business in New York, and, upon information and belief, having assets located in New York, involving fraudulent transfers.

10.      Defendant, 5th Avenue Partners (U.K.) Ltd. a/k/a Fifth Avenue Partners (U.K.) Ltd., (hereinafter "FIFTH AVENUE U.K.") is, and was, at all relevant times hereto, a company organized under the laws of England and Wales, with offices at: Calle Conquistador 18, Planta Primero, Palma de Mallorca, 07001, Spain, as well as at: 26 Upper Book Street, London, 1WK 7QE, and/or 10 Dominion Street, London, EC2M 2EE, U.K., and other locations. FIFTH AVENUE U.K. has been conducting business internationally, including its having conducted business in New York, and, upon information and belief, having assets located in New York, involving fraudulent transfers.

11.      Defendant, Devonshire Capital Ltd. (hereinafter "DEVONSHIRE") is, and was, at all relevant times hereto, a company organized under the laws of Gibraltar, with a nominee registered office at: 1 Corral Rd., Gibraltar, with de facto offices at: Calle Conquistador 18, Planta Primero, Palma de Mallorca, 07001, Spain, as well as at: 26

Upper Book Street, London, 1WK 7QE, and/or 10 Dominion Street, London, EC2M

2EE, U.K., and at other locations. DEVONSHIRE has been conducting business

internationally including its having conducted business in New York, and, upon

information and belief, having assets located in New York, involving fraudulent transfers.

12.    Defendant, Lamberhurst Properties Ltd. (hereinafter

"LAMBERHURST") is, and was, at all relevant times hereto, a company organized

under the laws of England and Wales, with offices at: Calle Conquistador 18, Planta

Primero, Palma de Mallorca, 07001, Spain, as well as at: 10 Dominion Street, London,

EC2M 2EE, U.K. LAMBERHURST has been conducting business internationally,

including its having conducted business in New York, and, upon information and belief,

having assets located in New York, involving fraudulent transfers.

13.    Defendant, 5th Avenue Partners GmbH, a/k/a Fifth Avenue Partners

GmbH, (hereinafter "FIFTH AVENUE GMBH") is, and was, at all relevant times hereto,

a company organized under the laws of Switzerland, with offices at: Alpenstrasse 11,

Zug, Switzerland, and at: Calle Conquistador 18, Planta Primero, Palma de Mallorca,

07001, Spain. FIFTH AVENUE GMBH has been conducting business internationally,

including its having conducted business in New York, and, upon information and belief,

having assets located in New York, involving fraudulent transfers.

14.    Defendant, Fifth Avenue Partners S.L., a/k/a 5th Avenue Partners S.L.

(hereinafter "FIFTH AVENUE SPAIN") is, and was, at all relevant times hereto, a

company organized under the laws of Spain, with offices at: Palma 07015, Edificio Reina

Constanza, piso 9-B, calle Porto Pi, numero 8, Palma, Mallorca, Spain Calle

Conquistador 18, Planta Primero, Palma de Mallorca, 07001, Spain. FIFTH AVENUE

SPAIN has been conducting business internationally, including its having conducted
business in New York, and, upon information and belief, having assets located in New
York, involving fraudulent transfers.

15.    5th Avenue Partners Ltd., a/k/a Defendant Fifth Avenue Partners Ltd,
(hereinafter "FIFTH AVENUE BVI") is, and was, at all relevant times hereto, a company
organized under the laws of the British Virgin Islands, International Business Company
No. 502359,  with offshore offices at: c/o Nerine Trust (BVI) Ltd., P.O. Box 905, Nerine
Chambers, 5 Columbus Centre, Pelican Drive, Road Town, Tortola, BVI, and offices at:
Calle Conquistador 18, Planta Primero, Palma de Mallorca, 07001, Spain.  FIFTH
AVENUE BVI has been conducting business internationally, including its having
conducted business in New York, and, upon information and belief, having assets located
in New York, involving fraudulent transfers.

16.    At all times material hereto, each of the defendants was the agent, servant,
partner, and/or employee of each of the other defendants and was acting within the scope
of his, her, or its agency or employment and acting also with the full knowledge or
subsequent ratification of his, her, or its partners, principals, or employers.

### III.    JURISDICTION AND VENUE

17.    This Court has jurisdiction over the subject matter of this action, pursuant
to 28 U.S.C. §1332, in that the plaintiffs and the defendants are citizens of different states
and/or countries and the amount of controversy, exclusive of interest and costs, exceeds
the sum of $75,000

18.    Venue is proper, pursuant to 28 U.S.C. §1391 (a), in that a substantial part
of the events or omissions giving rise to the claims occurred, or substantial part of

property that is the subject of the action is situated within, this district.  Venue is also

proper, pursuant to 28 U.S.C. §1391 (d), in that the defendants are citizens of foreign

countries.

19.    This Court has additionally jurisdiction over the subject matter of this

action pursuant to the Uniform Fraudulent Conveyance Act of the State of New York,

N.Y. Debt. & Cred. Law, Art. 10 [§ 270 *et seq.*] because most of the transactions at issue

passed through the accounts of the banking and financial institutions in New York,

involving fraudulent transfers/conveyances.

20.    This Court has additional jurisdiction because a part of the claims brought

herewith by plaintiffs is asserted under the securities federal law.  Furthermore, this Court

has jurisdiction because the necessary discovery is due from the financial institutions

located in New York, particularly located in the Southern District of New York.

21.    This Court has jurisdiction because the trades of bonds at issue occurred,

among other commercial papers, with the American MTNs and/or bonds, generally

known as Fannie Mae, Freddie Mac, Ginnie Mae, and others, issued by the various

American governmental, public, and private institutions and organizations in New York

and elsewhere, and regularly traded on the financial market in New York.

22.    As mentioned, above, the forum where the claim on conversion was

adjudicated, was the Commercial Court, Queens Bench Division, London, U.K.  In that

prior action, plaintiff, HSBC Bank PLC, controlled litigation, disallowing defendants to

assert their claims in any meaningful manner, allowing to assert only the claim based on

conversion and money had and received, with restitution relief.  There was a problem of

due process in that case, because HSBC dominated the Commercial Court, operated

without required notice and blocked access of the certain defendants to documentary

submission. At no time did the plaintiffs propose or validly agree with forum to be in

London, and acquiesced only with adjudication of the claim based on conversion and

money had and received, for purposes of immediate restitution to the extent of the

amounts of the funds blocked in London. Furthermore, no meaningful discovery was

allowed.

23.     The forum in New York is appropriate and/or necessary for the claims that

could be properly brought in this forum, such as, for example, claims under the federal

securities law, which relief cannot be asserted in London at all.

24.     Furthermore, plaintiffs could not and cannot get unprejudiced adjudication

of supplemental claims in London, because a part of the misappropriated funds (up to $4

million) was improperly donated by the key defendant, BROWN, to a large political

party in England, the Liberal Democratic Party. The destiny of these proceeds is

entangled with political struggle in England, used by that political party's opponents for

the politization of the issues and drawing the undue media commentary on politics.

These unusual circumstances have rendered London forum *non conveniens* for the non-

British claimants, in this particular matter, that have zero involvement or interest in

British politics, nor do they have inclination to be a part of any political controversies in

the U.K.

## IV.     UNDERLYING FACTS

25.     It  should be noted that BROWN, 5th Avenue Partners Ltd, 5th Avenue

GmbH, other companies controlled by BROWN and Brown's BANK, HSBC, have acted

in what can be called a "cabal," and any reference herein to Brown is intended as a reference to the "cabal-type relationship" with HSBC, whether expressly stated or not. Nothing herein is intended to be a waiver by the plaintiffs' rights against HSBC.

26.     At the times relevant hereto, the plaintiffs (including their predecessor in rights) sought on the financial market investment opportunities, namely safe investments into Medium-Term Notes (also known as "MTN"s or "bonds") of governmental, public, and private institutions in various jurisdictions, including in the U.S. The investment objective of the plaintiffs was to generate profits by purchasing for investment purposes and thereupon selling bonds solely issued by financial institutions with a very high credit rating -- A+ or better.

27.     BROWN, an international bond trader with a British passport and a permanent resident status in the U.S., residing at certain times before in the State of Florida and in New York State, having his contemporaneous corporate offices in Spain, Switzerland, and the U.K., was recommended to each of the plaintiffs or their predecessors in rights (hereinafter "plaintiffs" shall include both the plaintiffs named in this action and their predecessors in rights), i.e. by HSBC and others, to further their investment objectives.

28.     What appears to be the trade name FIFTH AVENUE, that BROWN used for his entities incorporated in several jurisdictions as 5th Avenue," was, on information and belief, used by BROWN to create the impression of being related to an avenue in the Borough of Manhattan, New York, under that same name, and to imply before third parties his close association with the financial markets in New York.

29.    At all times, BROWN, HSBC and others, however, concealed before the plaintiffs that there was, in fact, an outstanding warrant for BROWN's arrest in the State of Florida, after BROWN avoided appearing before the Court in Florida for writing worthless checks.

30.    BROWN acted through the FIFTH AVENUE accounts at his bank, HSBC Bank PLC in London (hereinafter "HSBC"), a part of the major international banking group known as HSBC Holdings PLC or otherwise Hong Kong and Shanghai Banking Group and/or banking group using trade name of HSBC, which accounts he maintained and/or controlled in an *ad hoc* association and alleged conspiracy with HSBC.

31.    BROWN, as well as HSBC, promised the plaintiffs and/or their representatives, orally and in writing, that he, Brown, as well as HSBC would direct the agreed-upon investments in the MTN/bond financial markets. BROWN and HSBC pledged that they would oversee and protect the investments of the plaintiffs.

32.    As a part of promoting his services, BROWN gave to the plaintiffs and/or their representatives private access to the web-site requiring a password, promoting his services only to his clients or potential clients, world-wide, including in the United States.

33.    The promotional materials on FIFTH AVENUE website indicated, inter *alia*, that FIFTH AVENUE traded in U.S.-originated bonds, such as Fannie Mae, Freddie Mac, notes based on the American mortgage underwriting pools, and various other MTNs/bonds and commercial papers on the U.S. financial market. The website implied that FIFTH AVENUE complied with the U.S. regulations.

34.    As a part of the investment terms, established in an express written form, BROWN and/or HSBC, were not allowed, under any circumstances, to move the plaintiffs' funds from the FIFTH AVENUE account(s) at HSBC.

35.    However, instead of the promised operations and instead of safeguarding the funds that BROWN and HSBC had received from the plaintiffs on the FIFTH AVENUE account(s) at HSBC, BROWN and HSBC fraudulently and deceitfully misappropriated the investment funds of the plaintiffs for unauthorized transactions, including for his own personal use and purchases. For example, among other things, the purchase of a private jet aircraft (at the price of $4.1 million), manufactured in the U.S., as well as engaged in unauthorized trading with various futures and options investments.

36.    Instead of trading activities with bonds, BROWN made substantial donations to the Liberal Democratic Party in the U.K. (up to $4 million), the purpose of which is obscure even today. On information and belief, BROWN intended to get protectors in the influential political circles in London to insulate him from any future claims to be brought in England.

37.    Among other activities towards getting protection from the powerful political figures in the U.K., BROWN used that private jet for free air transportation of the top executives of the Liberal Democratic Party, with whom he entertained close personal relationships, in the course of the parliamentary election campaign in the U.K.

38.    BROWN, assisted by HSBC, wrongfully converted the funds of the plaintiffs, while at the same time he continued to send trading wires and bank account statements from HSBC to the plaintiffs. BROWN, through wire transfers from HSBC, also provided for over six (6) months profits, deliberately deceiving the plaintiffs as if the

trade activities were successfully developing and keeping them unaware of his fraudulent activities for that period of time.  Partial admission of minor misconduct appears to have been used to cover up for the misappropriation and concealment of real substantial profits obtained using the plaintiffs.

39.    On or about October 18, 2005, BROWN was unexpectedly detained in London, upon his suspicious and possibly contrived conflict with HSBC, with whom he had been associated with regard to the FIFTH AVENUE accounts.  BROWN was then temporarily released, surrendered his passport to HSBC, but then left the U.K. on false pretenses (somehow fraudulently obtaining a substitute passport) for returning to Spain where he mostly resided.

40.    In or about April of 2006, BROWN was apprehended, now being in Spain, yet again, and extradited to London, the U.K.  BROWN then pled guilty to two counts of fraud, i.e. false pretenses involving the obtaining of the new passport and false statements in an affidavit, particularly concerning trades at Refco Securities LLC in New York, as alleged more in detail below.

41.    For those confessed crimes BROWN was sentenced in or about September of 2006 to two years of imprisonment in the U.K.  Limited confessions and a plea bargain may have been used as a convenient solution to avoid discovery of greater schemes and concealment by BROWN and HSBC of the plaintiffs' proceeds, as well as to insulate BROWN, whose whereabouts, either in prison or on bail, were not published and unknown.

42.     On information and belief, on or about May of 2007, when his conditional release on the above counts was due, BROWN was further charged by British law enforcement with additional multiple counts of fraud and remains in custody or on bail.

43.     Certain of BROWN's close associates in the U.K. have also, on information and belief, been detained or arrested by British authorities on various charges associated with management and operation of FIFTH AVENUE.

44.     These arrested persons included, on information and belief, approximately four operators at Pritchard Stockbrokers Ltd. ("PRITCHARD"), an England and Wales company, with offices at: Roddis House, Old Christchurch Road, Bournemouth, BH1 1LG, U.K.  PRITCHARD has been regulated by the Financial Services Authority in London as an authorized brokerage firm.

45.     BROWN had an ownership interest in PRITCHARD and exercised, through a parent entity, KSC Broking Ltd., an England and Wales company, control over PRITCHARD's decision-making process.  On information and belief, BROWN used PRITCHARD's accounts and status of a licensed stock broker for commingling and diverting proceeds and for fraudulent transfers between the pools of assets.

## V.     PREVIOUSLY ADJUDICATED CLAIM IN CONVERSION, MONEY HAD AND RECEIVED; ORDER OF RESTITUTION

46.     By October 23, 2006, when the Judgment, based on conversion claim, was entered in the above mentioned matter, initiated by HSBC in the High Court of Justice, the Commercial Court, Queen's Bench Division, 2005 Folio 841, the Honorable Justice Cooke found that BROWN and 4 companies had "no real prospect of successfully defending" the "part 20" defendants' cross-claims.  See page 2 of Exhibit "A".

47.    It was Ordered that Judgment was entered for SO and LU in the amount of $26,864144.00 and for MANN in the amount of $4,179,226.00 to be paid by BROWN and FIFTH AVENUE.  Additionally, it was Ordered that judgment be entered for SO and LU in the amount of €4 million to be paid by FIFTH GMBH.  See pages 2-3 of Exhibit "A".

48.    BROWN and FIFTH AVENUE were also ordered to pay interest to SO, LU and MANN, which is to be compounded monthly continuing until the Judgment is paid. See page 2 of Exhibit "A".

49.    The other judgment debtors related to BROWN were Ordered to pay MANN $472,925.00, individually, and an additional $4,100,000.00 to the judgment creditors as a whole. See page 2 of Exhibit "A".

50.    Furthermore, the judgment creditors were entitled to trace in equity a Raytheon Aircraft Premier 1, manufactured in the U.S. (2002 production), which was purchased from its U.S. manufacturer with their funds ($4.1 million) by DEVONSHIRE. See page 4 of Exhibit "A".

51.    This private jet aircraft has been temporarily placed into the hands of certain Receivers in the U.K., pending its public sale to bidders worldwide.

52.    To date, the plaintiffs, however, have not been able to collect all of the judgment debt pursuant to the Order, referred to in Exhibit "A", and the substantial judgment debt remains unsatisfied.

53.    The prospective of collection of the judgment debt in the U.K. has been mostly exhausted by this time.  The basis for the U.K. jurisdiction as to the judgment

creditors has been eliminated and is non-existent, and the judgment creditors have duly

sought the remedies in the U.S. jurisdiction for collection purposes on that judgment debt.

54.    In particular, said judgment creditors have filed an action in aid of

judgment enforcement, styled *In Re Judgment of Commercial Court, dated October 23,*

*2006*, Docket No. 07cv4779.

## VI.    UNDERLYING FACTS FOR SUPPLEMENTAL CLAIMS

55.    Between December, 2004 and April, 2005, the plaintiffs and other

investors, independently invested a total of approximately $50 million in the accounts of

FIFTH AVENUE, at HSBC, as mentioned above, a major banking group having offices

in over 70 countries, including its substantial presence in the USA (assets' volume

ranking No. 8 commercial bank in the U.S. and by far the largest foreign bank in the

U.S.).

56.    The sole purpose of that investment was to purchase and resell high-credit

rated fixed income instruments on the MTNs/bonds market.  It was the intent of each of

the investors and the promise of the plaintiffs and HSBC to keep each investor's funds

segregated within the FIFTH AVENUE accounts at HSBC.

57.    The submission of those funds by the plaintiffs was conditioned, as

mentioned above, in the most categorical terms as a strict and irrevocable condition for

placement of funds, that the said funds could not be wire transferred out of those FIFTH

AVENUE accounts at HSBC.

58.    The FIFTH AVENUE investment accounts were controlled by, and at

HSBC, and with HSBC, by BROWN, the medium-term bond trader, who, despite an

outstanding felony arrest warrant against him for deceit in a check-writing incident in Florida, was highly recommended to the plaintiffs by HSBC.

59.    The FIFTH AVENUE investment accounts were maintained by HSBC in London, in an *ad hoc* conspiracy with HSBC.  BROWN and HSBC were to act within the parameters, and based on the terms, of the irrevocable investment instructions, namely, the trading in bonds with a credit rating of A+ or better, which irrevocable instructions BROWN gave to his bankers and HSBC accepted.

60.    As it was discovered by October, 2005, virtually all of the funds placed by the plaintiffs into the FIFTH AVENUE accounts at HSBC had been actually removed. Those funds were used contrary to the terms of the irrevocable instructions, issued by BROWN, accepted and stamped by HSBC, for the funds' placement by the plaintiffs. BROWN by, through, and with knowledge of HSBC intentionally made the destination of the removed proceeds belonging to the plaintiffs, involving multiple fraudulent transfers, obscure for tracing.

61.    BROWN maintained many bank accounts worldwide, in particular in the multiple names associated with the trade name of FIFTH AVENUE, as well as in the names of DEVONSHIRE, LAMBERHURST, IDB Foundation, and using numerous other corporate names, as well as trustees, for the purpose of directing and coordinating the unauthorized movement of funds around the world, communicating with other persons.

62.    Those persons with whom BROWN, incarcerated in England, was coordinating his activities included Swiss bankers Juerg Walker and Reto Walker, an Australian national, Mark Ellis, BROWN's partner and trader at FIFTH AVENUE, and

others. These persons included BROWN's contacts, certain bankers at major financial institutions whom he used for references at REFCO as counterparty buyers, all using BLOOMBERG e-mail addresses, acting in concert with BROWN.

63.     Furthermore, BROWN established business contacts for trading transactions with U.S.-based counterparts: Chris Modica, of Cantor Fitzgerald LLC ("CANTOR FITZGERALD"), Craig Christensen, of Christensen Law Group (in California), Jeffrey M. Moritz, of Univest Financial Group Inc. ("UNIVEST") in New York, and others.

64.     Upon information and belief, the proceeds placed by the plaintiffs were used in the course of BROWN's bonds trading in New York.

65.     In particular, BROWN directed $10 million of commingled funds to New York in February of 2005, which is addressed more specifically below. See also Exhibit "B" hereto.

66.     The certain financial institutions, where BROWN's trades were either serviced or documented, hold discoverable bonds' trading information, including profits, the disclosure of which is already mandated in consolidated financial statements required from NYSE-traded companies. Such evidence on the documentary information available in New York includes, *inter alia*, the following examples:

       i     From March to September, 2005, the plaintiffs received profits that were wire transferred from London based upon the investments made in the FIFTH AVENUE accounts. Accompanying every wire transaction, a trade ticket generated by BROWN through his BLOOMBERG account was made and sent to each plaintiff or his/her representatives. The trade tickets were allegedly also sent through the BLOOMBERG system. See Exhibits "C" and "D", with the alleged trade tickets incorporated herewith by reference.

       ii.  Two additional trades ("the PRITCHARD's trades") were allegedly made by BROWN from his account at La Caixa Bank, Mallorca,

Spain, for which the plaintiffs' money was used by BROWN (and improperly transferred) from HSBC account to pay off the "Pritchard" investor, who was owed principle and profits from these trades at Pritchard Securities Ltd. (U.K.). This enabled BROWN to keep all of the profits and principle used to purchase these two bonds in his account at La Caixa Bank. The CUSIP and/or ISIN numbers of the bonds, the subject of the "Pritchard's trades," are set out in the BLOOMBERG message trade tickets of BROWN. In addition, BROWN made a trade for UNIVEST, ISIN XSO184468550 in January of 2005, which may have involved commingling of the assets involved in trades.

("ISIN" stands for International Securities Identification Number).

67.    As a result of the fraudulent transactions, undertaken by BROWN and his agents with the plaintiffs' funds and the controversy of the disappeared funds, the plaintiffs' reputation in the financial circles in the U.S. and elsewhere suffered, causing certain consequences adverse for the plaintiffs.

68.    In particular, MANN used to have an outstanding professional reputation as a retired attorney, successful entrepreneur and investor, with a membership in three reputable professional associations, having numerous affiliations.  MANN had an established business name, allowing him to deal with banks, companies, high net worth individuals and their advisors, in position of trust, and various entities, virtually with the unlimited business opportunities, and capitalizing on those possibilities.  As a result of BROWN's frauds and criminal conduct, MANN's outstanding reputation has been severely damaged, impacting upon his ability to deal and, in particular, resulting in numerous new deals and contracts withdrawn or withheld, resulting in substantial damages, lost business and revenues.  Such damages, eventually irreparable, have unreasonably and unjustifiably effected his and his family's life.

69.    LU and SO also used to have a highly reputable standing, with their families' businesses employing tens of thousands of employees in several jurisdictions

and with the most successful business and products spreading over the markets in a number of countries. As a result of BROWN's frauds and criminal conduct, LU's and SO's reputation has been severely damaged, impacting upon their ability to deal and resulting in numerous new deals and contracts withdrawn or withheld, resulting in substantial damages, lost business and revenues. Such damages, eventually irreparable, have unreasonably and unjustifiably effected their and their families' lives.

### VII.    UNAUTHORIZED TRANSFERS TO THE U.S. OF FUNDS

70.    On or about February 8, 2005, BROWN entered on behalf of FIFTH AVENUE into agreements with a licensed stock broker institution called Refco Securities LLC (hereinafter "REFCO"), a Delaware Limited Liability Company, engaging in business in the State of New York, with a primary office at 200 Liberty Street, Tower A, 23rd Floor, New York, NY.

71.    Those agreements, among others, included a clearing and services agreement, as well as a "Global Master Repurchasing Agreement", under which REFCO was the principal in New York for various trades undertaken by BROWN.

72.    Those agreements were signed on behalf of FIFTH AVENUE by BROWN and on behalf of REFCO by Stephen Hawksworth, who became, along with David Mudie and possibly others, BROWN's account executives at REFCO.

73.    Under that agreement, REFCO provided BROWN in New York with a substantial margin to acquire, on a highly leveraged basis, the MTNs/bonds, as well as to service all the corresponding trade transactions. REFCO was to be paid fees by FIFTH AVENUE, ultimately from the plaintiffs' funds, on every trade and for maintaining the investment account.

74.    More specifically, according to that agreement, REFCO undertook by contract with BROWN and his companies to open up accounts for BROWN and his companies, whereby REFCO was to act as a principal on their behalf, in the purchasing of A+ rated fixed income securities, and to sell such bonds to other bank counterparts, referred by BROWN through his agents to REFCO.

75.    REFCO gave BROWN, *inter alia*, access to Inter-dealer screens, as well as internal clearing accounting. REFCO on its part required BROWN's counterparties to execute a "Notice of Counterparty Status" letter to establish and define a formal relationship with REFCO, recognizing REFCO's role in the transactions.

76.    Certain alleged trading tickets generated by BROWN have the specific notations "through REFCO 99099". BROWN was also to receive regular statements from REFCO, some of which were subsequently found as being inconsistent with other records.

77.    BROWN immediately moved a substantial portion of his operation into New York. In one representative instance, as recorded in Bloomberg messaging, BROWN stated on February 13, 2005 to a third party: *"I have… moved everything to REFCO"*. See Exhibit "F".

78.    Additionally, on February 17, 2005, REFCO entered into a three-party agreement with FIFTH AVENUE and CANTOR FITZGERALD ("CANTOR FITZGERALD") in New York, by virtue of which both REFCO and CANTOR FITZGERALD could serve as principals for FIFTH AVENUE's trades in New York, which previewed that those trades were to be regulated under the laws of the State of New York.

79.    On about February 17, 2005, BROWN instructed HSBC, contrary to the terms of the irrevocable letter of instruction approved by HSBC, to wire transfer $10 million from his FIFTH AVENUE account at HSBC in London to REFCO in New York. For reasons unknown at this time, HSBC wire transferred those proceeds in two transactions, i.e. of $9,990,000 and $10,000 on the same day.  The monies were transferred to Chase Bank in New York, at ABA routing No. 021000021.

80.    These wire transfers were, specifically, in violation of the irrevocable letter of instruction issued by BROWN and approved by HSBC, and without any apparent inter-bank arrangement between BROWN's bank in London, HSBC, and REFCO, about the preservation and segregation of the commingled funds as set out in the irrevocable instructions.

81.    According to the BLOOMBERG records, reflected in BROWN's communications using the BLOOMBERG messaging system, BROWN allegedly engaged in certain trading activities in New York, including but not limited to ISIN: US78010FBK57, ISIN: US06738C8284, ISIN: XS0149161217, ISIN: XS016695700. See Exhibit "D".

82.    The alleged settlement dates for those trades in New York were on April 19, May 25, and June 17, in 2005.  The alleged principal amounts for the trading of the notes were, respectively, about $70,725,000 (issuer Royal Bank of Scotland), approximately $94.3 million (issuer Barclays Bank), and approximately $95.8 million (issuer Royal Bank of Scotland Capital Trust).

83.    There is a controversy whether those trades actually took place at all or rather those records were fraudulently created to cover up for misappropriation and diversion of funds.

84.    Brown had no authorization by the beneficial owners for the transfers of their funds to New York or anywhere from the accounts of FIFTH AVENUE at HSBC, as previewed in the irrevocable written instructions, acknowledged and stamped by HSBC.  Furthermore, the plaintiffs are not aware of any inter-bank agreement with REFCO and HSBC about the segregation of the assets, and of any other protections set out in the irrevocable letters of instructions, issued by BROWN and approved by HSBC.

85.    By October of 2005, a part of the initial investment at REFCO of $10 million was wire transferred from New York to London and allegedly also to La Caixa bank in Spain, and became commingled among various other proceeds fraudulently wire transferred from the FIFTH AVENUE account and controlled by BROWN.

86.    A certain other part of the $10 million of the commingled funds, the exact amount still be determined, has never been transferred from New York back to London or to Spain or otherwise recovered for or by the plaintiffs.

87.    On information and belief, a part of that amount has been fraudulently transferred to accounts other than the account of REFCO and is currently located in New York or is controlled out of New York, involving fraudulent conveyances.

**VIII.  DEFENDANTS' AGENTS AND COUNTERPARTS IN NEW YORK**

88.    As stated above, BROWN approached and actively used his various counterparts in New York, making them either knowing participants in questionable

activities, with various degrees of awareness, or unknowing but negligent agents and counterparts.

89.    As BLOOMBERG messaging and other evidence show, in the course of his trades in New York, BROWN was in contact with various financial officers, representing the certain financial institutions in New York.  On information and belief, BROWN relied on his counterparts as well as counterparty contacts, using Bloomberg email addresses, the full dimension of the involvement of BROWN's counterparts being still investigated.

90.    BLOOMBERG, an entity with which BROWN interacted, has offices in New York at 731 Lexington Avenue, 499 Park Avenue, and, therefore, "resides or is found" within the jurisdictional boundaries of the Southern District of New York.

91.    EUROCLEAR, an entity with which BROWN interacted, has offices in New York at 1 Battery Park Plaza, New York, NY 10004, and, therefore, "resides or is found" within the jurisdictional boundaries of the Southern District of New York.

92.    DTC, an entity with which BROWN interacted, has offices in New York at 220 W 30th St, New York, NY 10001, and, therefore, "resides or is found" within the jurisdictional boundaries of the Southern District of New York.

93.    REFCO, an entity through which BROWN interacted, has offices throughout New York, including various locations in Manhattan, i.e. its primary office at 200 Liberty Street, Tower A, 23rd Floor, New York, NY, and, therefore, REFCO "resides or is found" within the jurisdictional boundaries of the Southern District of New York. On information and belief, REFCO has been in the process of restructuring.

94.    CANTOR FITZGERALD, an entity with which BROWN interacted, has offices in New York at 110 East 59th Street, New York, New York 10022, and, therefore, "resides or is found" within the jurisdictional boundaries of the Southern District of New York.

95.    HSBC USA N.A , an entity with which BROWN interacted internationally, has offices throughout New York, including its various locations in Manhattan, and, therefore, "resides or is found" within the jurisdictional boundaries of the Southern District of New York.

## IX.    COUNT 1. MISREPRESENTATION

96.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 1 to 95 above, as if pled with the same force and effect again.

97.    BROWN, HSBC and other defendants, as well as his agents, have made fraudulent misrepresentations to the plaintiffs at all relevant times. Those misrepresentations were used to induce the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

98.    In particular, BROWN continued, using his agents in New York, to create the appearance that the trades were successfully conducted for the benefit of the plaintiffs, whereas the funds were misdirected and diverted. Among other, BROWN, on information and belief, fabricated falsified records of trades using the plaintiffs' proceeds, concealing the real trades conducted for his own benefit.

99.    As a direct and proximate result of those misrepresentations, the plaintiffs suffered damages. Among other consequences, the plaintiffs have suffered substantial

damage to their business and personal reputation, resulting in the lost contracts and ability to enter new deals. Plaintiffs are entitled to assert those damages, which have not been adjudicated.

### X.    COUNT 2. FRAUD

100.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 99 above, as if pled with the same force and effect again.

101.    BROWN and other defendants, as well as his agents, committed fraud on the plaintiffs at all relevant times. Those fraudulent schemes perpetrated by BROWN were used to induce the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

102.    Thereupon, BROWN continued, using his agents in New York, to create, in a cover-up, the appearance that the trades were successfully conducted for the benefit of the plaintiffs, whereas the funds were misdirected and diverted. Among other, BROWN, on information and belief, fabricated falsified records of trades using the plaintiffs' proceeds, concealing the real trades conducted for his own benefit.

103.    As a direct and proximate result of fraud committed by BROWN and other defendants, the plaintiffs suffered damages. Among other direct consequences, the plaintiffs have suffered substantial damage to their business and personal reputation, resulting in the lost contracts and ability to enter new deals. Plaintiffs are entitled to assert those damages, which have not adjudicated.

### XI.    COUNT 3.    UNJUST ENRICHMENT

104.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 103 above, as if pled with the same force and effect again.

105.    BROWN and other defendants, as well as his agents, have made fraudulent misrepresentations to the plaintiffs at all relevant times.  Those misrepresentations were used to induce the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

106.    In particular, BROWN continued, using his agents in New York, to create the appearance that the trades were successfully conducted for the benefit of the plaintiffs, whereas the funds were misdirected and diverted.  On information and belief, those proceeds were diverted to the personal benefit of BROWN and his agents.  As a result of said unjust enrichment and loss of assets, the plaintiffs have suffered substantial damage to their business and personal reputation, resulting in the lost contracts and ability to enter new deals.

107.    As a direct and proximate result of unjust enrichment of BROWN and other defendants, the plaintiffs suffered damages.  Plaintiffs are entitled to assert those damages, which have not adjudicated.

## XII.    COUNT 4.  FRAUDULENT CONVEYANCES

108.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 107 above, as if pled with the same force and effect again.

109.    BROWN and other defendants, as well as his agents, have undertaken numerous fraudulent conveyances at all relevant times.  Those agents and instrumentalities included, in particular, FIFTH AVENUE SPAIN and FIFTH AVENUE BVI, whose existence BROWN did not disclose to the plaintiffs or, on information and

belief, any his counterparts. Those fraudulent conveyances were used to divert the proceeds for the personal benefit and under the control of BROWN and of his agents.

110.    Among others, BROWN transferred proceeds in and out of New York, to divert proceeds and make those, as well as derivative profits, unavailable to the plaintiffs. On information and belief, those proceeds were diverted to the personal benefit of BROWN and of his agents.   Those fraudulent conveyances have, among other, impacted upon the plaintiffs have suffered substantial damage to their business and personal reputation, resulting in the lost contracts and ability to enter new deals.

111.    As a direct and proximate result of fraudulent conveyances the plaintiffs suffered damages in that the proceeds and their derivatives have been made unavailable to them, through a series of fraudulent conveyances.  Plaintiffs are entitled to assert those damages, which have not adjudicated.  In particular, plaintiffs are entitled to relief under Uniform Fraudulent Conveyance Act of the State of New York, N.Y. Debt. & Cred. Law art. 10 [§ 270 *et seq.*]

## XIII.  COUNT 5.  BREACH OF FIDUCIARY DUTIES
(v. All Defendants Except FIFTH AVENUE SPAIN and FIFTH AVENUE BVI)

112.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 111 above, as if pled with the same force and effect again.

113.    BROWN and some other defendants, whose corporate identities he used for opening the bank accounts, were in breach of fiduciary duties to the plaintiffs or their predecessors in rights, at all relevant times.  As a result of breach of trust, BROWN induced the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

114.    Being in breach of his fiduciary duties, BROWN continued, using his agents in New York, to create the appearance that the trades were successfully conducted for the benefit of the plaintiffs, whereas the funds were misdirected and diverted.  On information and belief, those proceeds were diverted to the personal benefit of BROWN and his agents.

115.    As a direct and proximate result of the breach of fiduciary duties by BROWN and the certain other defendants, the plaintiffs suffered damages.  As a result of BROWN's breach of his fiduciary duties, the plaintiffs have suffered substantial damage to their business and personal reputation, resulting in lost contracts and the ability to enter new deals.  Plaintiffs are entitled to assert these damages, which have not adjudicated.

### XIV.   COUNT 6.   VIOLATION OF THE SECURITIES EXCHANGE ACT, 15 U.S.C. §78j(b)

116.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 115 above, as if pled with the same force and effect again.

117.    BROWN undertook fraud in connection with sale and purchase of securities in the U.S. within the meaning of the prohibition under the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), Rule 10-B, allowing private relief, at all relevant times. As a result of misrepresentations in connection with the trading in securities within the jurisdiction of the U.S., BROWN induced the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

118.    Being in breach of the anti-fraud provision of the 1934 Securities Exchange Act, BROWN continued, using his agents in New York, to create the appearance that the trades were successfully conducted for the benefit of the plaintiffs,

whereas the funds were misdirected and diverted.  On information and belief, BROWN fabricated the appearance of trades in New York, whereas REFCO and other parties deny such trades took place.

119.    As a direct and proximate result of the violation of the anti-fraud provision of the Securities Exchange Act by BROWN in conjunction with his using the corporate defendants, the plaintiffs suffered damages.  Plaintiffs are entitled to assert those damages, which have not adjudicated.

## XV.    COUNT 7.    DECLARATORY RELIEF

120.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 119 above, as if pled with the same force and effect again.

121.    BROWN and some other defendants, whose corporate identities he used for opening the bank accounts, undertook certain fraudulent activities in New York or effecting the U.S. at all relevant times.  As a result of breach of trust, BROWN induced the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

122.    Being in breach of his fiduciary duties and of the law in the U.S., BROWN continued, using his agents in New York, to create the appearance that the trades were successfully conducted for the benefit of the plaintiffs, whereas the funds were misdirected and diverted.

123.    Plaintiffs are entitled to adjudicate the declaratory relief in that BROWN was in breach of fiduciary duties and, while acting in New York, violated the laws of the U.S., causing damages to the plaintiffs.  Plaintiffs are entitled to obtain declaratory relief, which has not been adjudicated.

## XVI.    COUNT 8.    ACCOUNTING

124.    Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 123 above, as if pled with the same force and effect again.

125.    BROWN and some other defendants, whose corporate identities he used for opening the bank accounts, induced the plaintiffs to transfer the funds under the control of BROWN and his bank HSBC, with the condition that the assets be on a blocked account(s).

126.    The monies were transferred out of the blocked amount, and, on information and belief, used for undisclosed trade.  On information and belief, those proceeds were diverted to the personal benefit of BROWN and his agents.

127.    As a direct and proximate result of the activities of BROWN and the certain other defendants, the plaintiffs' funds were used for generating undisclosed profits, which were diverted.  Plaintiffs are entitled to accounting by BROWN as to all proceeds received, all trading transactions, and all profits generated thereupon.  The claim for accounting has not been adjudicated.

WHEREFORE, PLAINTIFFS MANN, LOTUSBAY and LIAN, respectfully request this Honorable Court, to grant relief on all counts, to grant compensatory and punitive damages caused by BROWN, in conjunction with the other defendants, in regards to misrepresentations and fraud, to grant relief under the Uniform Fraudulent Conveyances Act of New York, N.Y. Debt. & Cred. Law, Art. 10 [§ 270 *et seq.*], private relief under the anti-fraud provision of the Securities Exchange Act, 15 U.S.C. §78j(b),

and declaratory and accounting relief as prayed herein, as well as such other and further

relief as this Court finds proper and just.

       DATED: July 10, 2007

                        Respectfully submitted,

                        RAWLE & HENDERSON LLP

                        By: _____
                        Joshua Bachrach, Esquire,
                        Counsel for plaintiffs
                        Suite 4636, 46th Floor
                        140 Broadway, New York, NY 10005

# EXHIBIT  A

Claim No. 2005 Folio 841

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

The Honourable Mr Justice Cooke

BETWEEN:



HSBC BANK PLC

Claimant

-and-

(1) 5TH AVENUE PARTNERS LIMITED
(2) MICHAEL ROBERT ALEXANDER BROWN
(3) ADM INVESTOR SERVICES
(4) DEVONSHIRE CAPITAL LIMITED
(5) LAMBERHURST DEVELOPMENTS LIMITED
(7) PREMIER EQUITY LIMITED
(8) PRITCHARD STOCKBROKERS LIMITED
(9) 5TH AVENUE PARTNERS GMBH
(10) KEVIN SO
(11) YAN LUCY LU
(12) CHARLES MARTIN EDWARDS
(13) ROBERT WILLIAM MANN
& Others

Defendants

---

**ORDER FOR JUDGMENT TO BE ENTERED
FOR THE SLM INVESTORS AGAINST
MR BROWN AND HIS COMPANIES**

---

**UPON THE APPLICATION** by the Tenth ("Mr So"), Eleventh ("Ms Lu") and Thirteenth ("Mr Mann") Defendants (collectively "the SLM Investors") dated 4 October 2006 for an order that judgment to be entered for them on their Part 20 Claims against the Second Defendant ("Mr Brown") and his companies, the First ("5th Avenue"), Fourth ("Devonshire"), Fifth ("Lamberhurst Developments") and Ninth ("GmbH") Defendants, and for payment out of monies in Court

**AND UPON HEARING** Leading and Junior Counsel for the SLM Investors and also for the Twelfth Defendant ("Mr Edwards") and the Claimant ("HSBC")

**AND UPON READING** the fifth and sixth witness statements of David Richard Kendall dated 22 September and 4 October 2006 respectively, together with the exhibits thereto, and the other documents marked on the Court file as having been read

**AND** Mr Brown and his companies having no real prospect of successfully defending the SLM Investors' Part 20 Claims and there being no other reason why the claims should be disposed of at a trial

**IT IS ORDERED THAT:**

1.    The SLM Investors have permission for short service of their application dated 4 October 2006 on Mr Brown and his companies

**AND IT IS FURTHER ORDERED AND DECLARED THAT** (subject to any credit which the SLM Investors must properly give in relation to the Remaining Balances and the Recovered Assets, as defined at paragraph 90A of the SLM Investors' Re-Re-Amended Defence, Counterclaim and Additional Claims, or otherwise):

<u>Mr Brown and 5th Avenue</u>

2.    Judgment be entered for Mr So and Ms Lu on their Part 20 Claims against each of Mr Brown and 5th Avenue in the sum of US$26,864,144.00, and for Mr Mann on his Part 20 Claims against each of Mr Brown and 5th Avenue in the sum of US$4,179,226.00.

3.    An account be taken by the Court as to:

(1)    The use or application by Mr Brown and/or 5th Avenue of the US$26,864,144.00 invested by Mr So and Ms Lu and not returned to them, and of the US$4,179,226.00 invested by Mr Mann and not returned to him, until the taking of the account and of all profits, investment income, growth and interest made by the use or application of such sums; and

(2)    The payments away made by Mr Brown and/or 5th Avenue from such funds invested by the SLM Investors.

4.    Mr Brown and 5th Avenue received and held the sum of US$26,864,144.00 as trustees for Mr So and Ms Lu and the sum of US$4,179,226.00 as trustees for Mr Mann, and the SLM Investors are entitled to trace in equity into the hands of Mr Brown and 5th

2

Avenue such funds invested by them and/or the proceeds thereof and/or any assets upon which the same or any part thereof have been expended, together with all profits, investment income, growth and interest earned on the same.

5. Mr Brown and 5th Avenue do all things within their power to transfer the sum of US$26,864,144.00 to Mr So and Ms Lu and the sum of US$4,179,226.00 to Mr Mann, together with all profits, investment income, growth and interest found to have been earned thereon on the taking of the account, and/or do reconstitute such funds (being trust funds) insofar as they have been dissipated since receipt and/or to pay to the SLM Investors the amount of the payments away found to have been made on the taking of the account.

6. Mr Brown and/or 5th Avenue do make restitution in the sum of US$26,864,144.00 to Mr So and Ms Lu and in the sum of US$4,179,226.00 to Mr Mann, and/or do pay damages in the foregoing amounts to the SLM Investors for fraudulent misrepresentation; and/or do compensate the SLM Investors in the foregoing amounts in equity for their breach of trust and/or breach of fiduciary duty and/or dishonest assistance and/or knowing receipt.

7. Mr Brown and 5th Avenue do pay interest to Mr So and Ms Lu and to Mr Mann at the rate of US Prime +1%, compounded with monthly rests pursuant to the equitable jurisdiction of the Court, amounting to US$3,550,576.97 in the case of Mr So and Ms Lu and US$408,172.80 in the case of Mr Mann up to the date of the order and continuing on the sums due to Mr So and Ms Lu and to Mr Mann until paid.

## Mr Brown's Other Companies

8. Judgment be entered for the SLM Investors on their Part 20 Claims against Devonshire in the following amounts: in the case of Mr Mann, in the amount of US$472,925.00; and in the case of the SLM Investors, in the amount of US$4,100,000.00 and of any further sum or sums received by Devonshire to be assessed.

9. Judgment be entered for the SLM Investors on their Part 20 Claims against Lamberhurst Developments in the amount of any sum or sums received by Lamberhurst Developments to be assessed.

10.    Judgment be entered for the SLM Investors on their Part 20 Claims against GmbH in the following amounts: in the case of Mr So and Ms Lu, in the amount of €4 million; and in the case of the SLM Investors, in the amount of any or any further sum or sums received by GmbH to be assessed.

11.    An account be taken by the Court as to:

(1)    Such of the amount of the US$26,864,144.00 invested by Mr So and Ms Lu and not returned to them, and of the US$4,179,226.00 invested by Mr Mann and not returned to him, as were received by each of Devonshire, Lamberhurst Developments and GmbH (collectively "Mr Brown's other companies"); and

(2)    The use or application by each of Mr Brown's other companies of such funds invested by the SLM Investors as were received by it until the taking of the account and of all profits, investment income, growth and interest made by the use or application of such sums; and

(3)    The payments away made by each of Mr Brown's other companies from such funds invested by the SLM Investors.

12.    All sums found to have been received by each of Mr Brown's other companies on the taking of the account are held by it as trustees for Mr So and Ms Lu and/or Mr Mann as appropriate, and the SLM Investors are entitled to trace in equity into the hands of each of Mr Brown's other companies such funds invested by them and/or the proceeds thereof and/or any assets upon which the same or any part thereof have been expended, together with all profits, investment income, growth and interest earned on the same. In particular (but without prejudice to the foregoing):

(1)    The SLM Investors are entitled to trace in equity into the hands of Devonshire a Raytheon Aircraft Premier 1 ("the Aircraft") that was purchased by Devonshire using US$4,100,000.00 of funds invested by Mr So and Ms Lu and Mr Mann; and

(2)    Mr Mann is entitled to trace into the hands of Devonshire the shares in the Seventh Defendant purchased by Devonshire for £125,000.00 and the loan of

4

£125,000.00 made to the Seventh Defendant by Devonshire using funds invested by Mr Mann.

13. Christopher Morris and Neil Mather of Begbies Traynor be appointed as receivers for the purposes of (1) selling the Aircraft that was purchased by Devonshire using US$4,100,000.00 of funds invested by the SLM Investors and (2) paying the net proceeds of such sale to the SLM Investors in the following proportions:

    (1)    Mr So and Ms Lu jointly, 30.31%

    (2)    Mr Mann, 69.69%

14. Each of Mr Brown's other companies do all things within their power to transfer all sums found to have been received by it on the taking of the account, together with all profits, investment income, growth and interest found to have been earned thereon, and/or do reconstitute such funds (being trust funds) insofar as they have been dissipated since receipt and/or do pay to the SLM Investors the amount of the payments away found to have been made on the taking of the account.

15. Each of Mr Brown's other companies do make restitution in the amount of all sums found to have been received by it on the taking of the account to Mr So and Ms Lu or Mr Mann as appropriate, and/or do compensate the SLM Investors in equity for dishonest assistance and/or knowing receipt, such compensation to be assessed.

16. Each of Mr Brown's other companies do pay interest to Mr So and Ms Lu and to Mr Mann at the rate of US Prime +1% on all sums found to be due to them, compounded with monthly rests pursuant to the equitable jurisdiction of the Court, to be assessed.

Recoveries

17. The US$ sums in Court standing to the credit of this action be apportioned between the SLM Investors and Mr Edwards in the following proportions:

    (1)    Mr So and Ms Lu jointly, 61.78%

    (2)    Mr Mann, 1.29%

    (3)    Mr Edwards, 36.93%

Such sums being the balances remaining in HSBC account numbers 58947825, 59099344 and 59102753 at the commencement of the present proceedings; the sum of US$2,852,972.00 recovered from La Caxia bank on 28 October 2005; and the sum of US$4,900,245.83 recovered from the Third Defendant on 21 December 2005; together with the interest that has accrued thereon up to the date of payment out.

18.    The Euro (€) sums in Court standing to the credit of this action be apportioned between the SLM Investors and Mr Edwards in the following proportions:

(1)    Mr So and Ms Lu jointly, 53.40%

(2)    Mr Mann, 0.00%

(3)    Mr Edwards, 46.60%

Such sums being the balance remaining in HSBC account number 58947833 at the commencement of the present proceedings; and the sums of €1,921,000.00 and €1,705,713.00 recovered from GmbH on 27 October and 29 November 2005 respectively; together with the interest that has accrued thereon up to the date of payment out.

19.    The Sterling (£) sums in Court standing to the credit of this action be apportioned between the SLM Investors and Mr Edwards in the following proportions:

(1)    Mr So and Ms Lu jointly, 21.10%

(2)    Mr Mann, 0.00%

(3)    Mr Edwards, 78.90%

Such sums being the balance remaining in HSBC account number 81489747 at the commencement of the present proceedings, together with the interest that has accrued thereon up to the date of payment out.

20.    Such proportion of all sums in Court standing to the credit of this action as are due to the SLM Investors be paid out to the SLM Investors' solicitors forthwith. Such proportion of all sums in Court standing to the credit of this action as are due to Mr Edwards be paid out to HSBC's solicitors forthwith.

6

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 7 of 36

Costs

21.    Mr Brown, 5th Avenue and Mr Brown's other companies be jointly and severally liable to pay and do pay the SLM Investors on an indemnity basis their costs of and occasioned by this application on or before 25 October 2006, such costs being summarily assessed at £58,130.00.

22.    Save as aforesaid, Mr Brown, 5th Avenue and Mr Brown's other companies be jointly and severally liable to pay and do pay the SLM Investors' their costs of the Part 20 Claims on an indemnity basis, such costs to be the subject of a detailed assessment, if not agreed.

23.    Liberty to Apply.


Dated: 11 October 2006

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 8 of 36

Claim No. 2005 Folio 841

## IN THE HIGH COURT OF JUSTICE

## QUEEN'S BENCH DIVISION

## COMMERCIAL COURT

The Honourable Mr Justice Cooke

BETWEEN:

HSBC BANK PLC

Claimant

-and-

(1) 5TH AVENUE PARTNERS LIMITED
(2) MICHAEL ROBERT ALEXANDER BROWN
(3) ADM INVESTOR SERVICES
(4) DEVONSHIRE CAPITAL LIMITED
(5) LAMBERHURST DEVELOPMENTS LIMITED
(7) PREMIER EQUITY LIMITED
(8) PRITCHARD STOCKBROKERS LIMITED
(9) 5TH AVENUE PARTNERS GMBH
(10) KEVIN SO
(11) YAN LUCY LU
(12) CHARLES MARTIN EDWARDS
(13) ROBERT WILLIAM MANN
& Others

Defendants

---

### ORDER FOR JUDGMENT TO BE ENTERED FOR THE SLM INVESTORS AGAINST MR BROWN AND HIS COMPANIES

---

KENDALL FREEMAN
One Fetter Lane,
London EC4A 1JB

Tel: +44 (0)20 7583 4055
Fax: +44 (0)20 7353 7377
Ref: SRP/NM3/01143262

Solicitors for Mr So, Ms Lu and Mr Mann

8

# EXHIBIT  B

101/002/033

# 5th Avenue Partners Ltd

10 Dominion Street
London
EC2M 2EE

Tel:+41 41 763 2930
Fax:+41 1 355 3226
Email: info@5ave.ch

5th Ave

## URGENT Fax Transmittal Form

To: KAREN/ WIRES

Name:
Organization Name/Dept:
CC:
Phone number:
Fax number:

From

Michael Brown

Tel:+41 41 763 2930
Fax:+41 1 355 3226
Email: info@5ave.ch

Urgent
For Review
Please Comment
Please Reply

Date sent:    17/02/05
Time sent:
Number of pages including cover page: 01

Message:
Dear Karen:

Please transfer, immediately, the amount of $10,000,000 to the following account.
These funds should be taken from account number 59099344, held at your bank.
An immediate fax confirmation of receipt of this order is requested.

SWIFT: CHASUS33XXX
Chase Bank
ABA: 021000021
Name: REFCO SECURITIES LLC
Account: 140085413
FURTHER CREDIT: 5th Avenue Partners Ltd
Customer Acct: 11022787

Thank you in advance for your immediate attention to this.

Regards

Michael Brown
Signatory

THIS FACSIMILE AND THE INFORMATION CONTAINED HEREIN MAYBE CONFIDENTIAL AND SUBJECT TO LEGAL PRIVILEGE. IT IS INTENDED SOLELY FOR THE USE OF THE NAMED RECIPIENT. IF YOU RECEIVE THIS FAX IN ERROR YOU MUST NOT DISCLOSE ANY OF THE INFORMATION CONTAINED HEREIN. YOU SHOULD NOT COPY OR REPRODUCE ANY OF THE ATTACHED INFORMATION. PLEASE DESTROY IT IMMEDIATELY AND CONTACT US ON THE TEL PHONE NUMBER LISTED BELOW. WE WILL REIMBURSE YOU FOR ANY COSTS IN DOING SO. THANK YOU

17/02 2005 THU 13:29    [TX/RX NO 9956]    ☑001

002/001/067

```
                                                              Page 1
ELECTRONIC PAYMENTS DETAILS                   Date 08Oct2005 Time 17:53


Product 59099344 FGN DEPOSIT 5TH AVENUE PARTNERS LTD

Process date 18Feb2005
Payment reference number 7X18025MP1807999

Payment type                  Electronic funds transfer
Debit value date              18Feb2005
Debit amount                  USD 9,990,000.00
Credit value date             18Feb2005
Credit amount                 USD 9,990,000.00
 it account number            59099344
Agents charges                BEN
Payee bank sort code          87476369
-------------------------     ------------------------------------
Ordering customer             5TH AVENUE PARTNERS LTD
-------------------------     ------------------------------------
Beneficiary customer          REFCO SECURITIES LLC
-------------------------     ------------------------------------
Beneficiary account number    /140085413
-------------------------     ------------------------------------
Statement details             PMT ORDER 18FEB
                              7X18025MP1807999
                              REFCO SECURITIES L
-------------------------     ------------------------------------
Payment details               FFC TO 5TH AVENUE PARTNERS LTD
                              CUSTOMER ACCT 11022787
                              HSBC REF MPAY2523 18FEB05.
-------------------------     ------------------------------------
 k to bank information        ADDITION TO PAYMENT FOR
                              USD 10,000.00
-------------------------     ------------------------------------
Debit bank                    5TH AVENUE PARTNERS LIMITED
                              10 DOMINION STREET
                              LONDON EC2M 2EE
-------------------------     ------------------------------------
Account with bank             //CP0002
                              CHASE BANK CHASUS33XXX 021000021
-------------------------     ------------------------------------
Payee bank                    HSBC BANK USA, N.A.
                              NEW YORK

                          End of report
```

002/001/066

```
                                                            Page 1
ELECTRONIC PAYMENTS DETAILS              Date 08Oct2005 Time 17:53


Product 59099344 FGN DEPOSIT 5TH AVENUE PARTNERS LTD

Process date 18Feb2005
Payment reference number 7X18025M01807906

Payment type                 Electronic funds transfer
Debit value date             18Feb2005
Debit amount                 USD 10,000.00
Credit value date            18Feb2005
Credit amount                USD 10,000.00
Debit account number         59099344
Charges amount               USD 36.75
Charges debited to           58947825
Agents charges               SHA
Payee bank sort code         87476369
------------------------     ---------------------------------------
Ordering customer            5TH AVENUE PARTNERS LTD
------------------------     ---------------------------------------
Beneficiary customer         REFCO SECURITIES LLC
------------------------     ---------------------------------------
Beneficiary account number   /140085413
------------------------     ---------------------------------------
Statement details            PMT ORDER 18FEB
                             7X18025M01807906
                             REFCO SECURITIES L
------------------------     ---------------------------------------
Payment details              FFC TO 5TH AVENUE PARTNERS LTD
                             CUSTOMER ACCT 11022787
------------------------     ---------------------------------------
Debit bank                   5TH AVENUE PARTNERS LIMITED
                             10 DOMINION STREET
                             LONDON EC2M 2EE
------------------------     ---------------------------------------
Account with bank            //CP0002
                             CHASE BANK CHASUS33XXX 021000021
------------------------     ---------------------------------------
Payee bank                   HSBC BANK USA, N.A.
                             NEW YORK

                    End of report
```

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 13 of 36

# EXHIBIT C

400/002/063

# 5TH Avenue Partners Ltd

## Completed Trade ticket 8

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL-PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL_PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 25.07.05 | ING | Straight | US$75,000,000 | 0.976 | $73,200,000 | HSBC | US$75,000,000 | 0.989 | US$74,175,000 | 01.08.05 |
| 25.07.05 | ING | Straight | US$65,000,000 | 0.976 | $63,440,000 | GARB | US$65,000,000 | 0.989 | US$64,285,000 | 01.08.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | US$140,000,000 | | $136,640,000 | | | | $138,460,000 | |
| | | | | | | PROFIT | | | $1,820,000 | |

Profits:

| | | | | | |
|---|---|---|---|---|---|
| YAN: | Bought: | $85,000,000 | Profit | 1,115,660.00 | x 50% = 557,830.00 |
| CME: | Bought: | $36,680,000 | Profit | 476,840.00 | x50% = 238,420.00 |
| RM: | Bought: | $14,280,000 | Profit | 185,640.00 | x50% = 92,820.00 |
| Landbase | Bought: | $3,220,000 | Profit | 41,860.00 | |

Bonis Profits PLts

400/002/064

# 5TH Avenue Partners Ltd

## Completed Trade ticket 7

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 4.07.05 | Lloyds | reverse | US$130,000,000 | 0.936 | $121,680,000 | RBS | €130,000,000 | 0.952 | US$123,760,000 | 08.07.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | $121,680,000 | | PROFIT | | US$123,780,000 | |
| | | | | | | | | | $2,080,000 | |

Profits:

| | | | |
|---|---|---|---|
| YAN: | Bought: $79,890,000 | x 50% | Profit: $1,275,040.00 |
| CME: | Bought: $34,080,000 | x50% | Profit: $ 544,960.00 |
| RM: | Bought: $13,280,000 | x50% | Profit: $ 212,160.00 |
| Landbase | Bought: $ 2,990,000 | | Profit $ 47,840.00 |

$637,520.00
$272,480.00
$106,080.00

4D0/002/065

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 14.06.06 | RBS | Knock-In | €121,500,000 | 0.928 | €112,752,000 | WLB | €121,500,000 | 0.955 | €116,032,500 | 17.06.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **TOTALS** | | | | | €112,752,000 | | | | €116,032,500 | |
| | | | | | | | PROFIT | | €3,280,500.00 | |
| | | | | | | | | | | |

Profits:

| | | | | |
|---|---|---|---|---|
| YAN: | Bought €74,479,500= | Profit= | 2,010,946.50 | x50%  1,005,473.25 |
| CME: | Bought €31,833,000= | Profit= | 859,491.00 | x50%  429,745.50 |
| RM: | Bought €12,393,000= | Profit= | 334,611.00 | x50%  167,305.50 |
| Landbase | Bought €2,794,500 = Profit 75,451.50 | | | |

NB: Please note that these notes were issued, bought and sold in Euro

Exhibits to complaint, civil action Mann, Lotushay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 19 of 36

400/002/065

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 14.06.06 | RBS | Knock-In | €121,500,000 | 0.928 | €112,752,000 | WLB | €121,500,000 | 0.955 | €116,032,500 | 17.06.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | €112,752,000 | | PROFIT | | €116,032,500 | |
| | | | | | | | | | €3,280,500.00 | |
| | | | | | | | | | | |

Profits:

| | | | | | |
|---|---|---|---|---|---|
| YAN: | Bought €74,479,500= | Profit= | 2,010,946.50 | x50% | 1,005,473.25 |
| CME: | Bought €31,833,000= | Profit= | 859,491.00 | x50% | 429,745.50 |
| RM: | Bought €12,393,000= | Profit= | 334,611.00 | x50% | 167,305.50 |
| Landbase | Bought €2,794,500 = | Profit | 75,451.50 | | |

NB: Please note that these notes were issued, bought and sold in Euro

400/002/066

# 5ᵀᴴ Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|------|---------------|--------------|----------|-------|------------|--------------|----------|-------|------------|-----------------|
| 26.05.05 | BARC | STEP UP | $75,000,000 | 0.943 | 70,725,000 | GARB | 75,000,000 | 0.958 | 71,850,000 | 01.06.05 |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
| TOTALS |  |  |  |  | 70,725,000 |  |  |  | 71,850,000 |  |
|  |  |  |  |  |  | PROFIT |  |  | 1,260,000 |  |
|  |  |  |  |  |  |  |  |  |  |  |

Profits:

Bought 48mm = profit    = 720,000    X 50%    380,000
Bought 19mm = profit    = 285,000    X50%     142,500
Bought 8mm = profit     = 120,000    X 50%    60,000

YAN:
CME:
RM:

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 21 of 36

400/002/066

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 26.05.05 | BARC | STEP UP | $75,000,000 | 0.943 | 70,725,000 | GARB | 75,000,000 | 0.958 | 71,850,000 | 01.06.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **TOTALS** | | | | | 70,725,000 | | PROFIT | | 71,850,000 | |
| | | | | | | | | | 1,1250,000 | |
| | | | | | | | | | | |

Profits:

YAN: Bought 48mm = profit = 720,000   X 50%   360,000
CME: Bought 19mm = profit = 285,000   X50%    142,500
RM:  Bought 8mm = profit = 120,000    X 50%   60,000

400/002/067

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 20.05.05 | BARC | STEP UP | $75,000,000 | 0.943 | 70,725,000 | GARB | 75,000,000 | 0.958 | 71,850,000 | 25.05.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | 70,725,000 | | PROFIT | | 71,850,000 | |
| | | | | | | | | | 1,125,000 | |
| | | | | | | | | | | |

Profits:

YAN:  Bought 48mm = profit  = 720,000  X 50%  360,000
CME:  Bought 19mm = profit  = 285,000  X50%  142,500
RM:   Bought 8mm = profit   = 120,000  X 50%  60,000

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 23 of 36

400/002/067

J. Ticket

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 20.05.05 | BARC | STEP UP | $75,000,000 | 0.943 | 70,725,000 | GARB | 75,000,000 | 0.968 | 71,850,000 | 25.05.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | 70,725,000 | | | | 71,850,000 | |
| | | | | | | | PROFIT | | 1,125,000 | |
| | | | | | | | | | | |

Profits:

| | | | | | |
|---|---|---|---|---|---|
| YAN: | Bought 48mm = profit | = 720,000 | X 50% | 360,000 |
| CME: | Bought 19mm = profit | = 285,000 | X 50% | 142,500 |
| RM: | Bought 8mm = profit | = 120,000 | X 50% | 60,000 |

400/002/068

# 5ᵀᴴ Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 23.03.05 | RBS | EMTN 3.75% 10yrs US$ | $100,000,000 | 95.33% | 96,330,000 | WESTLB | 100,000,000 | 96.58% | 96,580,000 | 19.04.05 |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
| TOTALS |  |  |  |  | 96,330,000 |  | PROFIT |  | 96,580,000 |  |
|  |  |  |  |  |  |  |  |  | 1,250,000cr |  |

Profits:

UNIVEST: Bought 40mm = profit @ 1.25%  = 500,000    50% to Univest  250,000
CME:     Bought 40mm = profit @1.25%   = 500,000    50% to CME      250,000
RM:      Bought 20mm = profit @ 1.25%  = 250,000    50% to RM       125,00

Bonus Profits/PLGTS

400/002/064

# 5TH Avenue Partners Ltd

## Completed Trade ticket 7

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 4.07.05 | Lloyds | reverse | US$130,000,000 | 0.936 | $121,680,000 | RBS | €130,000,000 | 0.952 | US$123,760,000 | 08.07.05 |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
| TOTALS |  |  |  |  | $121,680,000 |  |  |  | US$123,760,000 |  |
|  |  |  |  |  |  |  | PROFIT |  | $2,080,000 |  |

Profits:

| | | | |
|---|---|---|---|
| YAN: | Bought: $79,690,000 | x 50% | Profit: $1,275,040.00 | $637,520.00 |
| CME: | Bought: $34,060,000 | x50% | Profit: $544,980.00 | $272,480.00 |
| RM: | Bought: $13,280,000 | x50% | Profit: $212,160.00 | $106,080.00 |
| Landbase | Bought: $2,990,000 | x50% | Profit: $47,840.00 | |

400/002/068

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 23.03.05 | RBS | EMTN 3.75% 10yrs US$ | $100,000,000 | 95.33% | 96,330,000 | WESTLB | 100,000,000 | 96.58% | 96,580,000 | 19.04.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | 96,330,000 | PROFIT | | | 96,580,000 | |
| | | | | | | | | | 1,250,000cr | |
| | | | | | | | | | | |

Profits:

| | | | | | |
|---|---|---|---|---|---|
| UNIVEST: | Bought 40mm = profit @ 1.25% | = | 500,000 | 50% to Univest | 250,000 |
| CME: | Bought 40mm = profit @ 1.25% | = | 500,000 | 50% to CME | 250,000 |
| RM: | Bought 20mm = profit @ 1.25% | = | 250,000 | 50% to RM | 125,00 |

400/002/069

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 05.05.05 | HSBC | EMTN Step Up callable | $147,000,000 | 92.68% | 136,239,600 | DEIX | 147,000,000 | 94.35% | 138,694,500 | 09.05.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTALS | | | | | 136,239,600 | | | | 138,694,500 | |
| | | | | | | PROFIT | | | 2,454,900 | |
| | | | | | | | | | | |

Profits:

| | | | | | | |
|---|---|---|---|---|---|---|
| YAN: | Bought 87mm = profit | = | 1,452,900 | 50% to YAN | 728,000 |
| CME: | Bought 40mm = profit | = | 688,000 | 50% to CME | 334,000 |
| RM: | Bought 20mm = profit | = | 334,000 | 50% to RM | 167,000 |

400/002/063

# 5ᵀᴴ Avenue Partners Ltd

## Completed Trade ticket 8

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 25.07.05 | ING | Straight | US$75,000,000 | 0.976 | $73,200,000 | HSBC | US$75,000,000 | 0.989 | US$74,175,000 | 01.08.05 |
| 25.07.05 | ING | Straight | US$65,000,000 | 0.976 | $63,440,000 | GARB | US$65,000,000 | 0.989 | US$64,285,000 | 01.08.05 |
| | | | | | | | | | | |
| TOTALS | | | US$140,000,000 | | $136,640,000 | | | | $138,460,000 | |
| | | | | | | PROFIT | | | $1,820,000 | |
| | | | | | | | | | | |

Profits:

| | | | | | |
|---|---|---|---|---|---|
| YAN: | Bought $85,000,000.00 | Profit | 1,115,660.00 | x 50% = | 557,830.00 |
| CME: | Bought $38,680,000 | Profit | 476,840.00 | x50% = | 238,420.00 |
| RM: | Bought $14,280,000 | Profit | 185,640.00 | x50% = | 92,820.00 |
| Landbase | Bought $3,220,000 | Profit | 41,860.00 | | |

400/002/069

# 5TH Avenue Partners Ltd

## Completed Trade ticket

| DATE | SELLER TICKER | TYPE OF NOTE | QUANTITY | PRICE | TOTAL PAID | BUYER TICKER | QUANTITY | PRICE | TOTAL PAID | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 05.05.05 | HSBC | EMTN Step Up callable | $147,000,000 | 92.68% | 136,239,600 | DEIX | 147,000,000 | 94.35% | 138,694,500 | 09.05.05 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | PROFIT | | 138,694,500 | |
| TOTALS | | | | | 136,239,600 | | | | 2,454,900 | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Profits:

Bought 87mm = profit  =  1,452,900          50% to YAN        728,000  
Bought 40mm = profit  "     668,000          50% to CME        334,000  
Bought 20mm = profit  "     334,000          50% to RM         167,000  

YAN:  
CME:  
RM:  

Exhibits to complaint, civil action Mann, Lotusbay, Lian v. Brown et al., U.S. District Court for Southern District of New York, Page 28 of 36

# EXHIBIT  D

```
From: HELP1@bloomberg.net|HELP DESK|BLOOMBERG| |
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

My question is:
this bloomberg machine is in my office in london registered to
mark ellis, can we please cancel him as a user on this as he
has resigned and revert it back to a secondary machine for me.
i have one in spain
Reply:
Michael, I will ask your account representative to contact you
to help you on above query.
        THANK YOU FOR USING BLOOMBERG HELP!
For further help: {IB HELP<GO>} for IB or {2<GO>} for Message.
=====End Message=====
=====Begin Message=====
Message#: 117
Message Sent: 10/31/2005 09:34:08
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US78010FBK57    * TRADE TICKET *      As of: 10/31/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED:  6/16/05)
BUYS : 100000    (M) of RBS 3.7575 06/16/06   CUSIP: 78010FBK5
PRICE 95.3300000 or  YIELD  8.840344 (to  6/16/06 @ 100.0000)
SETTLEMENT on  4/19/05        ISSUER: ROYAL BK OF SCOTLAND NY
NOTES:  THROUGH REFCO 99099
                                  {78010FBK Corp DES<GO>}
** PRINCIPAL:                 $         95,330,000.00 **
** ACCRUED (  0 days):                           0.00 **
** TOTAL:                     $         95,330,000.00 **
=====End Message=====
=====Begin Message=====
Message#: 118
Message Sent: 10/31/2005 09:36:18
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US78010FBK57    * TRADE TICKET *      As of: 03/23/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED:  3/16/05)
BUYS : 100000    (M) of RBS 3.7575 06/16/06   CUSIP: 78010FBK5
PRICE 95.3300000 or  YIELD  8.840344 (to  6/16/06 @ 100.0000)
SETTLEMENT on  4/19/05        ISSUER: ROYAL BK OF SCOTLAND NY
NOTES:  THROUGH REFCO 99099
                                  {78010FBK Corp DES<GO>}
** PRINCIPAL:                 $         95,330,000.00 **
** ACCRUED (  0 days):                           0.00 **
** TOTAL:                     $         95,330,000.00
=====End Message=====
=====Begin Message=====
Message#: 119
Message Sent: 10/31/2005 09:39:11
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:
```

```
ISIN: US78010FBK57    * TRADE TICKET *        As of: 10/31/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED:  6/16/05)
SELLS: 100000      (M) of RBS 3.7575 06/16/06    CUSIP: 78010FBK5
PRICE 96.5800000 or YIELD  7.431663 (to  6/16/06 @ 100.0000)
SETTLEMENT on  4/19/05       ISSUER: ROYAL BK OF SCOTLAND NY
NOTES:  THROUGH REFCO 99099
                                   {78010FBK Corp DES<GO>}
** PRINCIPAL:                    $         96,580,000.00 **          |
** ACCRUED ( 0 days):                              0.00 **          |
** TOTAL:                        $         96,580,000.00 **          |
=====End Message=====
=====Begin Message=====
Message#: 120
Message Sent: 10/31/2005 10:03:22
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US78010FBK57    * TRADE TICKET *        As of: 03/23/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED:  3/16/05)
SELLS: 100000      (M) of RBS 3.7575 06/16/06    CUSIP: 78010FBK5
PRICE 96.5800000 or YIELD  7.431663 (to  6/16/06 @ 100.0000)
SETTLEMENT on  4/19/05       ISSUER: ROYAL BK OF SCOTLAND NY
NOTES:  THROUGH REFCO 99099
                                   {78010FBK Corp DES<GO>}
** PRINCIPAL:                    $         96,580,000.00 **
** ACCRUED ( 0 days):                              0.00 **
** TOTAL:                        $         96,580,000.00 *
=====End Message=====
=====Begin Message=====
Message#: 121
Message Sent: 10/31/2005 10:51:22
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US06738C8284     * TRADE TICKET *        As of:  5/20/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED:  6/ 8/05)
BUYS : 75000       (M) of BACR 6.278 12/29/49    CUSIP: 06738C828
PRICE 94.3000000 or YIELD   6.621020 (to 12/29/49 @ 100.0000)
SETTLEMENT on  5/25/05         ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099
                                   {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                    $         70,725,000.00 **          |
** ACCRUED ( - days):                              0.00 **          |
** TOTAL:                        $         70,725,000.00 **          |
=====End Message=====
=====Begin Message=====
Message#: 122
Message Sent: 10/31/2005 10:57:59
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US06738C8284     * TRADE TICKET *        As of:  5/20/05
```

```
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED: 6/ 8/05)
BUYS : 75000      (M) of BACR 6.278 12/29/49  CUSIP: 06738C828
PRICE  94.3000000 or  YIELD   6.621020 (to 12/29/49 @ 100.0000)
SETTLEMENT on  5/25/05           ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099
                                  {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                    $         70,725,000.00 **
** ACCRUED ( - days):                            0.00 **
** TOTAL:                        $         70,725,000.00 **
=====End Message=====
=====Begin Message=====
Message#: 123
Message Sent: 10/31/2005 11:05:19
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:


ISIN: US06738C8284      * TRADE TICKET *      As of:  5/20/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED: 6/ 8/05)
SELLS: 75000      (M) of BACR 6.278 12/29/49  CUSIP: 06738C828
PRICE  95.8000000 or  YIELD   6.511013 (to 12/29/49 @ 100.0000)
SETTLEMENT on  5/25/05           ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099 TO GARB
                                  {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                    $         71,850,000.00 **
** ACCRUED ( - days):                            0.00 **
** TOTAL:                        $         71,850,000.00 **
=====End Message=====
=====Begin Message=====
Message#: 124
Message Sent: 10/31/2005 11:05:46
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:


ISIN: US06738C8284      * TRADE TICKET *      As of:  5/20/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS      (DATED: 6/ 8/05)
SELLS: 75000      (M) of BACR 6.278 12/29/49  CUSIP: 06738C828
PRICE  95.8000000 or  YIELD   6.511013 (to 12/29/49 @ 100.0000)
SETTLEMENT on  5/25/05           ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099 TO GARB
                                  {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                    $         71,850,000.00 **
** ACCRUED ( - days):                            0.00 **
** TOTAL:                        $         71,850,000.00 **
=====End Message=====
=====Begin Message=====
Message#: 125
Message Sent: 10/31/2005 11:11:30
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:


ISIN: US06738C8284      * TRADE TICKET *      As of:  5/26/05
```

```
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS        (DATED:  6/ 8/05)
BUYS : 75000      (M) of BACR 6.278 12/29/49   CUSIP: 06738C828
PRICE 94.3000000  or  YIELD   6.628645 (to 12/29/49 @ 100.0000)
SETTLEMENT on  6/ 1/05              ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099
                                   {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                   $           70,725,000.00 **        |
** ACCRUED ( - days):                              0.00 **         |
** TOTAL:                       $           70,725,000.00 **        |
=====End Message=====
=====Begin Message=====
Message#: 126
Message Sent: 10/31/2005 11:11:52
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: US06738C8284    * TRADE TICKET *       As of:  5/26/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS        (DATED:  6/ 8/05)
BUYS : 75000      (M) of BACR 6.278 12/29/49   CUSIP: 06738C828
PRICE 94.3000000  or  YIELD   6.628645 (to 12/29/49 @ 100.0000)
SETTLEMENT on  6/ 1/05              ISSUER: BARCLAYS BANK PLC
NOTES:  THROUGH REFCO 99099
                                   {06738C82 Corp DES<GO>}
** NEXT CALL on 12/15/34 @ 100.00 ** CALLABLE
** PRINCIPAL:                   $           70,725,000.00 **        |
** ACCRUED ( - days):                              0.00 **         |
** TOTAL:                       $           70,725,000.00 **        |
=====End Message=====
=====Begin Message=====
Message#: 127
Message Sent: 10/31/2005 12:55:35
From: CMODICA2@bloomberg.net|CHRIS MODICA|GARBAN INTERCAPITAL| |
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

GOOD DAY
=====End Message=====
=====Begin Message=====
Message#: 128
Message Sent: 10/31/2005 12:56:59
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: CMODICA2@bloomberg.net|CHRIS MODICA|GARBAN INTERCAPITAL| |
Subject:

GOOD DAY
Reply:
hey
=====End Message=====
=====Begin Message=====
Message#: 129
Message Sent: 10/31/2005 12:57:39
From: CMODICA2@bloomberg.net|CHRIS MODICA|GARBAN INTERCAPITAL| |
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:
```

```
GOOD DAY
Reply:
hey
Reply:
WORKING ON A BRIDGE LOAN FOR U
=====End Message=====
=====Begin Message=====
Message#: 130
Message Sent: 10/31/2005 12:58:33
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: CMODICA2@bloomberg.net|CHRIS MODICA|GARBAN INTERCAPITAL| |
Subject:

GOOD DAY
Reply:
hey
Reply:
WORKING ON A BRIDGE LOAN FOR U
Reply:
PLEASE!!!!!!
=====End Message=====
=====Begin Message=====
Message#: 131
Message Sent: 10/31/2005 13:05:46
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
Subject:

ISIN: XS0149161217      * TRADE TICKET *        As of:  6/14/05
TRDR:MICHAEL BROWN>FIFTH AVENUE PARTNERS        (DATED:  6/10/02)
BUYS : 121500      (M) of RBS 6.467 12/29/49    CUSIP: EC5761811
PRICE  92.8000000  or  YIELD   4.707820 (to 12/29/49 @ 100.0000)
SETTLEMENT on  6/17/05         ISSUER: RBS CAPITAL TRUST A
NOTES:  THROUGH REFCO 99099
                                {EC576181 Corp DES<GO>}
** NEXT CALL on  6/30/12 @ 100.00 ** CALLABLE
** PRINCIPAL:                         112,752,000.00 **
** ACCRUED (352 days):                  7,577,552.22 **
** TOTAL:                             120,329,552.22 **
=====End Message=====
=====Begin Message=====
Message#: 132
Message Sent: 11/01/2005 08:37:46
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: CMODICA2@bloomberg.net|CHRIS MODICA|GARBAN INTERCAPITAL| |
Subject:

GOOD DAY
Reply:
hey
Reply:
WORKING ON A BRIDGE LOAN FOR U
Reply:
any luck?
=====End Message=====
=====Begin Message=====
Message#: 133
```

# EXHIBIT E/F

La Caixa, also known as Caixa D''estalvis I Pensions De Barcelona, has
priced a EUR2.5 billion cedulas hipotecarias, with the following terms,
lead managers J.P. Morgan, ABN AMRO, Calyon and Dresdner Kleinwort
Wasserstein. Amount: EUR2.5 billion Maturity: Feb. 17, 2025 Coupon:
3.875% Reoffer Price: 98.787 Payment Date: Feb. 17, 2005 Spread: 10
basis points over mid-swaps Debt Ratings: Aaa (Moody''s) Denominations:
100,000 Listing: Luxembourg, -02-05 1532GMT


Regards,

Rob.



=====End Message=====
=====Begin Message=====
Message#: 323
Message Sent: 02/13/2005 07:27:39
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: BSELGAS@bloomberg.net|BLANCA SELGAS|INVERCAIXA VALORES S| |
Subject: Re: Fwd: LA CAIXA CEDULAS HIPOTECARIAS

hi stranger!!!! i am in hong kong at the moment!!! I have changed all the
settlement stuff for me and moved everything to REFCO.. I have a model b with
them just now direct!! A good deal for all...I need toget invercaixa set as a
counterparty...i will get them to send  the trading letter to you and the model
b if you want.. I am interested in the notes below...can you bloom me your legal
 entity and euroclear number???? hope to see you  soon. MB
----- Original Message -----
From: BLANCA SELGAS, INVERCAIXA VALORES S
At:  2/ 7 15:01


>
> LA CAIXA CEDULAS HIPOTECARIAS*****new issue
>
> SIZE      2 BLL
> MAT       FEB 2025

> VALUE     TRADE DATE + 1 WEEK
> TIMMING   UNOFF. PRICE TALK TOM. BOOKS WILL OPEN WED AM SUBJECT
>           TO CNMV APPROVAL (EXP. TUES PM). LAUNCH + PRICING
>           EXPECTED WED/THU
> SPREAD    TBA
> LEADS     ABN/CALYON/DRKW/LA CAIXA

=====End Message=====
=====Begin Message=====
Message#: 324
Message Sent: 02/13/2005 07:31:12
From: FIFTHAVE@bloomberg.net|MICHAEL BROWN|FIFTH AVENUE PARTNER|321878|405614
To: NORDSTP@bloomberg.net|PER NORDSTROM|DRESDNER KLEINWORT W| |
Subject: Re: